LITTLE MOLE MUSIC, Ric Ocasek, Bruce Springsteen, Hulex Music, Bungalow Music, Controversy Music, Brockman Music and T.B. Harms Company, Plaintiffs,

v.

SPIKE INVESTMENT, INC. d/b/a B & G Amusement & Vending Co., Charles Bengimina, Thomas Bengimina and John Bengimina, Defendants.

No. 87–0360–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Aug. 16, 1989.

Bradley A. Hall, Stacy R. Obenhaus, Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiffs.

Donald E. Bucher, Scott Haines, Gould and Moore, Kansas City, Mo., for defendants.

## ORDER

STEVENS, District Judge.

Plaintiffs brought this action for copyright infringement pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101 *et seq.* Plaintiffs allege that on November 24, 1986, defendants made available for public performance plaintiffs' copyrighted musical compositions by means of an unlicensed coin-operated phonorecord player, or "jukebox." The court notes jurisdiction pursuant to 28 U.S.C. § 1338(a). The case is currently before the court on plaintiffs' motion for summary judgment, taken under advisement after an evidentiary hearing held to resolve questions concerning the level of defendants' culpability, the appropriate type of relief and the reasonableness of plaintiffs' attorneys' fees. Having now reviewed the parties' various submissions and the evidence adduced at the hearing, the court, for the following reasons, will grant plaintiffs' motion for summary judgment.

### I. *Background*

The court should first note that defendants have indicated that they would not contest that portion of plaintiffs' summary judgment motion relating to liability and statutory damages. Defendants' Response at 2. Rather, defendants have argued that they are "innocent infringers," and that consequently, the court should award minimum statutory damages and no attorney's fees. To allow the defendants the opportunity to present any potentially exculpatory evidence relating to such issues, the court ordered a hearing to take oral testimony on plaintiffs' motion, pursuant to Fed.R.Civ.P. 43(e). *See State of Utah v. Marsh,* 740 F.2d 799, 801 n. 2 (10th Cir.1984) (rule 43 authorizes use of oral testimony in conjunction with summary judgment motions); *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2723 at 61 (2d ed. 1983). Accordingly, as is the practice when ruling on a motion for summary judgment, the court will view the facts in the light most favorable to the nonmoving party, who must be given the benefit of all reasonable inferences that may be made from the record. *Adickes v. S.H. Kress &*

*Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rashick v. Prudent Supply Co.*, 830 F.2d 1497, 1499 (8th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). Facts established through testimony at the hearing will be so noted and will be considered together with the various affidavits, depositions and exhibits previously submitted by the parties.

Each plaintiff in this case is a music publisher and a member of the American Society of Composers, Authors and Publishers (ASCAP). Plaintiffs have granted ASCAP the nonexclusive right to license public performances of their copyrighted musical compositions. At all relevant times proximate to the alleged infringements, plaintiff Little Mole Music owned the copyright to the composition "These Dreams"; plaintiff Ric Ocasek owned the copyright to the composition "Drive"; plaintiff Bruce Springsteen owned the copyright works "Cover Me," "Dancing in the Dark" and "Pink Cadillac"; plaintiff Hulex Music owned the copyright to "The Heart of Rock and Roll"; plaintiff Bungalow Music owned the copyright to "Addicted to Love"; plaintiff Controversy Music owned the copyright to "When Doves Cry"; plaintiff Brockman Music owned the copyright to "Stuck on You"; and plaintiff T.B. Harms Company owned the copyright to the composition "That's Life." Plaintiffs have asserted their rights in these ten musical compositions by providing certificates of copyright registration (Plaintiffs' Exhibits 6–15), and defendants do not dispute plaintiffs' ownership of these works. *See* 17 U.S.C. § 410(c).

In early November of 1986, defendants Charles Bengimina, John Bengimina and Thomas Bengimina, as partners in the Bee Gee Management Company ("B & G"), took over the management of all jukeboxes and vending machines owned by Comp–Tech Vending, Inc.[1] By all accounts, when the Bengiminas assumed control over Comp–Tech's operations, things were in disarray. No location lists were available, many machines had not been serviced for months, and vendor commissions had not been paid. More importantly, none of the Comp–Tech machines which the Bengiminas were able to inventory had compulsory licenses affixed.

The unauthorized public performances of plaintiffs' copyrighted material took place on November 24, 1986, on an unlicensed jukebox located at Leo's Pizza, 6400 Johnson Drive, Mission, Kansas.[2] At the time of these unauthorized performances, there was a sticker affixed to the jukebox which read "B & G Amusement & Vending Company" and which contained telephone numbers to call for service. Affidavit of Jerry L. Jones, ¶ 5. Such stickers were ordinarily placed on the machines which B & G managed for Comp–Tech Vending. Deposition of Charles Bengimina at 41–42. The machine at Leo's was subsequently included in the bankruptcy estate of Comp–Tech and continued to be operated pursuant to an agreement with the trustee. Affidavit of Vincent Gullotta, ¶¶ 6 and 8.

There is no dispute that the machine at Leo's was owned by Comp–Tech and was intended to be managed by B & G. Nor do defendants deny that the machine was unlicensed, in violation of 17 U.S.C. § 116. In fact, plaintiffs have established that none

**1.** In defendants' response to plaintiffs' summary judgment motion, Thomas Bengimina is described as a "consultant to the partnership formed by John and Charles Bengimina to manage the operations of Comp–Tech Vending." Defendants' Response at 1. However, Thomas Bengimina has previously testified under oath during Comp–Tech's bankruptcy proceedings that he had a partnership interest in B & G. *See In re: Comp–Tech Vending, Inc.*, Case No. 87–00334–1 (Bankr.W.D.Mo. March 24, 1987); Tr. at 13–14, 32–34. Thomas Bengimina also acknowledged his partnership interest in B & G in his deposition. Deposition of Thomas Bengimi-

na at 127:17–25. Thus, the court is satisfied that no material issue of fact remains with respect to Mr. Bengimina's status as a partner in B & G.

**2.** Plaintiffs have offered the affidavits of Jerry L. Jones and Debra Jones to establish the place, date and times of these unauthorized public performances. Plaintiffs' Exhibits 16 and 17. Defendants do not dispute that such performances took place or that the ten musical compositions enumerated above were subject to copyright infringement as a result.

of the approximately 70–80 machines owned by Comp–Tech and managed by B & G were licensed in 1986 or 1987.[3] Rather, defendants argue that any resulting infringement was purely innocent because they reasonably assumed Comp–Tech had already obtained all necessary licenses before executing the management agreement, and because they were not specifically aware of the unlicensed machine at Leo's Pizza.[4] The court will now consider defendants' arguments.

## II. *Analysis*

For plaintiffs to prevail in a copyright infringement action, they must establish: 1) the originality and authorship of the compositions; 2) compliance with the formalities of the Copyright Act; 3) ownership of the copyrights; and 4) unauthorized public performance of the copyrighted compositions. *Almo Music Corp. v. 77 East Adams, Inc.*, 647 F.Supp. 123, 124 (N.D.Ill. 1986); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 632 (D.N.H. 1986); *Bourne Company v. Khalil*, 611 F.Supp. 269, 270 (E.D.Mich.1986). Plaintiffs have submitted the appropriate copyright registration documents for each of the ten compositions at issue, which is sufficient to raise a presumption in favor of the first three elements listed above. *See* 17 U.S.C. § 410(c); *Sandwiches, Inc. v. Wendy's Intern., Inc.*, 654 F.Supp. 1066, 1071 (E.D.Wisc.1987); *appeal dismissed*, 822 F.2d 707 (7th Cir.1987); *Boz Scaggs*

*Music v. KND Corp.*, 491 F.Supp. 908, 913 (D.Conn.1980). Although this presumption is rebuttable, *Sandwiches*, 654 F.Supp. at 1071–72, defendants' failure to dispute or deny plaintiffs' *prima facie* case conclusively establishes authorship, statutory compliance and ownership as a predicate to recovery for infringement. *See, e.g., Sailor Music*, 640 F.Supp. at 632–33.

Plaintiffs have also established the remaining element of a *prima facie* case of copyright infringement. The uncontroverted affidavits of Jerry L. Jones and Debra Jones show that public performances of the ten copyrighted compositions took place at Leo's Pizza on November 24, 1986. Such performances were unauthorized and without permission because no license was ever obtained and affixed to the jukebox as required by 17 U.S.C. § 116.[5] Accordingly, the court finds that copyright infringement in this case has been established.

### A. "Innocent Infringement"

Defendants do not deny that unauthorized public performances took place, but instead maintain that they were "innocent infringers," having no reason to believe that their actions constituted a violation of the Copyright Act. The court first notes that motive or intent is irrelevant to establishing liability, for "even an innocent infringer is liable for infringement … intent or knowledge is not an element of infringement." *Fitzgerald Pub. Co., Inc.*

---

**3.** *See* Plaintiffs' Hearing Exhibit 3 (certification from the Register of Copyrights showing no licensing activity concerning B & G from 1986 through 1988). The court should note that while this information is helpful in corroborating the fact that the Leo's machine was not properly licensed, the question of whether defendants may be liable for failure to obtain licenses for any other machines is not before the court. The present complaint concerns only the ten infringements occurring on November 24, 1986, with respect to the jukebox at Leo's.

**4.** While defendants' response clearly admits basic statutory liability for the unlicensed machine at Leo's—and argues only that damages should be minimal and that plaintiffs should recover no attorney's fees—defendants also filed a second, "supplemental" response, arguing that because section 116(b)(1)(A) allows applicants one month to apply for compulsory licenses, they

should not be liable at all, since they assumed control of Comp–Tech two weeks before the infringements occurred. Defendants cite no authority for this novel position. Moreover, this argument overlooks the fact that defendants *never* obtained a license for the machine, and thus defendants are not relieved from liability for violations occurring before untimely filing (or no filing) is made. *See* 37 C.F.R. § 201.16(f); *see also Broadcast Music, Inc. v. Xanthas, Inc.*, 674 F.Supp. 553, 557 (E.D.La. 1987), *aff'd in part, rev'd in part*, 855 F.2d 233 (5th Cir.1988).

**5.** Defendants have each admitted that B & G did not receive any form of permission from plaintiffs for the public performances of the ten compositions at issue. Deposition of Charles Bengimina at 80; Deposition of John Bengimina at 45 and 51; Deposition of Thomas Bengimina at 129, 134–35.

*v. Baylor Pub. Co., Inc.,* 807 F.2d 1110, 1113 (2d Cir.1986). On the contrary, innocence is only relevant to the court's fixing of statutory damages, "a remedy equitable in nature." *Id.*[6] Moreover, mere non-deliberate infringement is not "innocent"; rather, defendants must have "acted in complete ignorance of the fact that [their] conduct might somehow infringe upon the rights of another party." *Original Appalachian Artworks v. J.F. Reichert, Inc.,* 658 F.Supp. 458, 464 (E.D.Pa.1987).

In the present case, the court is convinced that defendants cannot be characterized as innocent infringers. By their own admission, Comp–Tech's business was in shambles when they assumed control. None of the machines which they inventoried had the required licenses affixed. This *should have* given defendants a clear indication that something was amiss, that as a result, they might "somehow infringe upon the rights of another party." *Id.* Indeed, given the fact that defendants were experienced operators, in the jukebox business since at least the late 1970s, it strains credibility to conclude that they failed to even suspect that Comp–Tech had not obtained licenses for 1986.[7] There is also ample evidence indicating that defendants had actual notice that there was an unlicensed Comp–Tech machine at the Leo's Pizza location on Johnson Drive well before they took over management of the business. Thomas Bengimina has admitted being contacted by the manager of Leo's in August or September 1986, at which time he received a copy of a letter sent by ASCAP, which clearly stated that the Leo's machine had no license. Deposition of Thomas Bengimina at 116–19; Plaintiffs'

Hearing Exhibit 24. Mr. Bengimina testified that he passed this letter along to Jeff Abboussie, then manager of Comp–Tech's Kansas City operations. There is also uncontroverted evidence that a similar letter from BMI, warning of the unlicensed jukebox at Leo's, was again brought to Thomas Bengimina's attention in late October of 1986. Plaintiffs' Hearing Exhibit 9; Deposition of Thomas Bengimina at 80. All told, the court is satisfied that defendants had sufficient actual notice of the unlicensed machine at Leo's that they knew or should have known infringement was likely. *See* 11 U.S.C. § 504(c)(2). Thus, they are not innocent infringers for purposes of assessing statutory damages.

**B. Type of Liability**

Liability for copyright infringement may be either direct, *see, e.g., RCA Records v. All–Fast Systems, Inc.,* 594 F.Supp. 335, 337 (S.D.N.Y.1984), or vicarious. *See Sony Corp. v. Universal Studios,* 464 U.S. 417, 436, 104 S.Ct. 774, 785, 78 L.Ed.2d 574 (1984); *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). Personal participation in the infringing activity will result in direct liability. *Southern Bell Telephone and Telegraph Co. v. Associated Telephone Directory Company,* 756 F.2d 801, 811 (11th Cir.1985). Vicarious liability is predicated on the right and ability of the defendant to supervise the infringing activity and the defendant's obvious and direct financial interest in such an activity. *RCA/Ariola International, Inc. v. Grayston Co.,* 845 F.2d 773, 781 (8th Cir.1988). In either context, infringement can result in personal

---

**6.** 17 U.S.C. § 504(c)(2) provides in part:

In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware *and had no reason to believe* that his or her acts constituted an infringement of copyright, the court i[n] [sic] its discretion may reduce the award of statutory damages to not less than $100. (Emphasis added.)

**7.** At the evidentiary hearing, Charles Bengimina testified that he twice wrote the United States Copyright Office in early 1987, seeking to discover whether Comp–Tech had obtained licenses for its machines. *See* Plaintiffs' Exhibit 13;

Defendants' Exhibit 7. However, the Copyright Office conducted a search of its records for 1987 and 1988, finding no correspondence from Charles Bengimina or B & G. Plaintiffs' Hearing Exhibit 26. In any event, Mr. Bengimina's belated inquiries would not alone make this a case of innocent infringement. Any doubt should have been resolved by simply purchasing licenses for the machines in 1986. As for 1987, it is clear that defendants could not "rely" on the possibility that Comp–Tech purchased, but did not affix licenses, since B & G was in sole control of the operation by that time.

joint and several liability for all those directly or vicariously involved. *Southern Bell,* 756 F.2d at 811.

■ In the present case, defendants, as partners in B & G, are each directly liable for failing to obtain the compulsory license for the machine on which the infringing public performances occurred. Because the machine was owned by Comp–Tech and was covered by the B & G management agreement, there is no question that defendants were jukebox "operators" for purposes of section 116.[8] Upon taking control of the business, they were invested with the sole responsibility of licensing all Comp–Tech machines, including the one at Leo's. Under the circumstances, the court is satisfied that each defendant may be held directly liable for the infringements.

Direct liability notwithstanding, the court alternatively finds defendants individually liable on a vicarious basis. They were unquestionably the primary individuals having the "right and ability" to license the machine. *See RCA/Ariola,* 845 F.2d at 781. Moreover, each defendant had a direct financial interest as a partner in an enterprise which encompassed the exploitation of copyrighted material. *Id.; see also Warner Brothers, Inc. v. O'Keefe,* 468 F.Supp. 16, 20 (S.D.Iowa 1978). Besides their ordinary partnership draws, if the defendants were successful in managing Comp–Tech's vending business, B & G was eventually to acquire the entire Kansas City operation. Clearly, the use and misuse of such machines is fundamentally motivated by a profit making intent. This is all that is required for vicarious copyright infringement.

In summary, plaintiffs have established that the B & G machine at Leo's was unlicensed, that ten separate infringements took place at that location on November 24, 1986, and that such infringements were not "innocent." Thus, plaintiffs have submitted a *prima facie* case on each claim. Defendants have failed to controvert any material fact, and in light of the testimony adduced at the evidentiary hearing, the court is satisfied that no genuine issue remains to be tried. *See Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 912–13 (D.Conn.1980); *Edwin H. Morris & Co. v. Burton,* 201 F.Supp. 36, 39 (E.D.La.1961).

**C. Relief**

■ Under the Copyright Act, a plaintiff may elect to recover an award of statutory damages instead of actual damages and lost profits. 17 U.S.C. § 504(c)(1); *Harris v. Emus Records Corp.,* 734 F.2d 1329 (9th Cir.1984). For each non-innocent infringement, the court must award "not less than $250 or more than $10,000 as the court considers just." 17 U.S.C. § 504(c)(1). "Within these statutory limits, the assessment of damages lies within the court's sound discretion and sense of justice." *Halnat Publishing Company v. L.A.P.A., Inc.,* 669 F.Supp. 933, 937 (D.Minn.1987). In the present case, after considering all the evidence presented, the court finds that damages should be assessed at $1,000 per infringement, for a total damages award of $10,000. The court believes this award will adequately compensate plaintiffs as well as punish the defendants and ultimately, it is hoped, deter future wrongful conduct. *See Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001, 1003 (E.D.Va.1985).[9] In addi-

---

**8.** Section 116(e)(2) provides:

(2) An "operator" is any person who alone or jointly with others:

(A) owns a coin-operated phonorecord player; or

(B) has the power to make a coin-operated phonorecord player available for placement in an establishment for purposes of public performance; or

(C) has the power to exercise primary control over the selection of the musical works made available for public performance on a coin-operated phonorecord player.

**9.** Plaintiffs have requested an award of $13,000, based on a calculation of twice what defendants would have paid if they had licensed the roughly 70 Comp–Tech machines under their control in 1986 and 1987. While courts have often doubled or tripled the amounts that should have been paid in licensing fees, *see Broadcast Music Inc. v. Triple L. Vending, Inc.,* 5 U.S.P.Q.2d 1346, 1987 WL 45244 (W.D.Tex. Aug. 14, 1987); *see also Halnat,* 669 F.Supp. at 937, in the present case there is insufficient evidence that B & G actually had control or access to that number of machines or that any infringements actually

tion, pursuant to 17 U.S.C. § 502(a), the court will issue a permanent injunction restraining defendants and all persons acting in concert with them from publicly performing, without appropriate permission, the compositions involved in this case.

### D. Costs and Attorneys' Fees

■ Under section 505 of the Copyright Act, an "award of full costs is mandatory ...," *Boz Scaggs Music*, 491 F.Supp. at 915, and therefore, costs totaling $1,205.60 will be allowed to plaintiffs. In contrast, an award of attorneys' fees under section 505 is within the sound discretion of the trial court. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 122 (8th Cir.1987). Plaintiffs have submitted affidavits establishing that they have incurred attorneys' fees in the amount of $17,040.75, representing a total of 231.25 hours billed among several different attorneys, whose rates range from $75 to $115 per hour. Defendants do not challenge the substance of plaintiffs' fees affidavits, the hours billed, or the rates charged. Rather, defendants argue that the infringements were not willful, thus justifying a denial of attorneys' fees. The court disagrees.

■ The court first notes that an award of attorneys' fees under the Copyright Act is not conditioned on a showing of bad faith or willful violation. *RCA/Ariola Intern., Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 780 (8th Cir.1988); *see also Casella v. Morris*, 820 F.2d 362 (11th Cir.1987). Moreover, the court has already determined that defendants are not innocent infringers, nor was their infringement based on a reasonable reliance on a position taken with respect to a novel or complex question of law—they simply failed to comply with the licensing requirements. There are consequently no factors which would justify denying plaintiffs a fee award. "Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded

routinely." *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985).

■ Defendants also argue that a fee award in excess of the statutory damage assessment would be unreasonable. However, it is well-established that a fee award need not be equal or less than the statutory damages amount. *See M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc.*, 574 F.Supp. 31, 36 (E.D.Pa.1983), *aff'd*, 732 F.2d 146 (3d Cir.1984) (no correlation between damage awards and attorneys' fees); *see also International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652 (N.D.Ill.1987), *aff'd*, 855 F.2d 375 (7th Cir.1988) ($21,502.75 fee award and a $10,500 statutory damages award); *Broadcast Music, Inc. v. Behulak*, 651 F.Supp. 57 (M.D.Fla.1986) ($41,887.50 in attorneys' fees and only $12,000 awarded in statutory damages). Such cases are in keeping with the policy behind the Copyright Act's fee shifting provision, for often the actual value of the recovery in copyright infringement actions may not be commensurate with the attorneys' fees incurred to obtain the recovery. Without the fee shifting provision, copyright owners would doubtless be exceedingly reluctant to enforce their rights in such cases.

While the basic facts of this case are not unduly complex, plaintiffs' counsel was nevertheless required to undertake comparatively extensive discovery to sort through B & G's chaotic business affairs. Plaintiffs' counsel have demonstrated commendable skill and diligence in pursuing this action and have charged fees which are customary for firms of the same size in the Kansas City area. The court has closely examined the affidavit of plaintiffs' counsel and finds no charges which are excessive, no inordinate amount of time spent on any task, and no services which could be deemed unnecessary or superfluous. In short, under the circumstances, the court finds no reason to adjust the lodestar amount of $17,040.75. Such an award is reasonable, given the length of time taken to litigate the case, the nature of the issues

occurred on them. *See Broadcast Music, Inc. v. Xanthas Inc.*, 855 F.2d 233, 239 (5th Cir.1988) (damage award, although within statutory limits, cannot be based upon speculation or inadmissible hearsay evidence).

involved, the customary fees charged, and the fee awards made in similar cases. *See, e.g., Kowalczyk,* 665 F.Supp. at 659–60.

For the reasons discussed above, it is

ORDERED that plaintiffs' motion for summary judgment is granted. It is further

ORDERED that defendants, their officers, agents, servants and employees are hereby enjoined and restrained from publicly performing, without appropriate permission, the ten compositions involved in this action. It is further

ORDERED that in satisfaction of this judgment, plaintiffs are hereby awarded $10,000 in statutory damages ($1,000 for ten violations), for which defendants are to be held jointly and severally liable. It is further

ORDERED that plaintiffs are awarded costs and attorneys' fees incurred in prosecuting this action, in the amount of $18,-246.35.