845 F.2d 773
 56 USLW 2661, 1988 Copr.L.Dec. P 26,271,
11 Fed.R.Serv.3d 114,
6 U.S.P.Q.2d 1692
 RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
THOMAS & GRAYSTON COMPANY, Appellee,
John Does 1-100.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
FALCON HEIGHTS PHARMACY, Appellee.
John Does 1-100.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
NELSON'S OFFICE SUPPLY STORES, Northtown Shopping Center,
Inc., d/b/a Nelson's Office Supply, Metacom, Inc.
and James I. McCann, Appellees.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
DESNICK BROS. DRUG, INC., Appellee,
John Does 1-100.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
ST. PAUL BOOK & STATIONERY COMPANY, d/b/a St. Paul Book &
Stationery, Appellee.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
BEL-AIRE PHARMACY, INC., d/b/a Bel-Aire Drugs, Appellee,
John Does 1-100,
Metacom, Inc. and James I. McCann, Appellees.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
FISHER PHOTO SUPPLY COMPANY, Appellee,
John Does 1-100,
Metacom, Inc., James I. McCann, Appellees.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
BYERLY'S INC., Appellee,
John Does 1-100.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
MERWIN DRUG COMPANY, INC., Appellee,
John Does 1-100.
RCA/ARIOLA INTERNATIONAL, INC. by change of name now BMG
Music; MCA Records, Inc.; Polygram Records,
Inc.; Atlantic Recording Corporation;
and CBS Inc., Appellants,
v.
ZUCKMAN ELECTRONICS COMPANY, INC., Appellee.
John Does 1-100, Metacom, Inc. and James I. McCann, Appellees.
 Nos. 87-5195 to 87-5204.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 17, 1987.
Decided April 28, 1988.
 
 Robert Vidas, Minneapolis, Minn., for appellants.
 Leo Stern, Minneapolis, Minn., for appellees.
 Before JOHN R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The duplication of copyrighted musical tapes on Rezound cassette duplicating machines in the Minneapolis-St. Paul area has resulted in an injunction and award of statutory damages, attorneys' fees, and costs against ten retailers who have had these machines on their premises,[1] the manufacturer of the machines, Metacom, Inc., and its President, James McCann. All parties to the litigation have appealed or cross-appealed. RCA/Ariola International[2] argues that the district court[3] erred in awarding damages against the twelve defendants jointly and severally; that the infringement was willful and therefore the district court should have awarded greater damages; that the district court based its award of fees and costs on an erroneously low damages figure; that the district court should have found contributory infringement; and that the injunction was inadequate. Metacom, McCann, and the retailers argue that there was no infringement by the retailers, there was no vicarious liability on the part of Metacom or McCann, that the injunctive terms will destroy the availability of the copying machine, and that there should have been no award of attorneys' fees or else the award should not have been as great as it was. We affirm the judgment of the district court.
 
 
 2
 RCA and the other appellants are members of a trade association called the Recording Industry Association of America (RIAA), which sent investigator Ralph Vaughan and others to the Twin City area in 1983 to investigate usage of the Rezound duplicating machine in copying copyrighted sound recordings. Metacom manufactures and markets the Rezound machine. Metacom retains ownership of the machines and places them at the retailers' stores free of charge. The district court found Metacom requires compliance with the rules and regulations set out in Metacom's operation manual. The Rezound machine is slotted so that it will only take specially notched blank tapes; ordinary blank tapes will not fit the machine. Metacom manufactures the specially notched blank tapes and sells them to the retailers, who sell them to customers. According to McCann, Metacom slots the machines in this manner so the retailer "can control his machinery in the store, so that customers, for instance, don't bring their own blank tapes in to copy on this machinery." The retailers involved in this action had "Rezound Centers" at their stores, where they kept a Rezound machine for their customers' use and sold the notched blank tapes. The Rezound machine made only monaural, as opposed to stereo, reproductions. Metacom advertises its machine for use in duplicating spoken word materials. Each Rezound Center had a copyright warning posted.[4]
 
 
 3
 RIIA gave Metacom notice on January 10, 1979 of claimed infringing duplication on the Rezound machines. Metacom's counsel answered that Metacom policed the Rezound Center operators to prevent the retailers from engaging in unauthorized duplication of copyrighted materials. In June, 1979 Metacom sought a legal opinion and its attorneys opined that even though "some customers may misuse the copier to reproduce copyrighted materials," Metacom had no potential liability for infringement from the Rezound equipment because the Rezound equipment was not being supplied "with the intention, purpose, knowledge or expectation that it is to be used for infringing purposes." McCann, writing on behalf of Metacom, advised the retailers not to permit their employees to take any part in the copying process, but to insist the customers operate the machine themselves.
 
 
 4
 Beginning in 1983 and continuing through 1985, the investigators of the RIAA Anti-Piracy Unit took musical tapes copyrighted by RCA and the other appellants to the businesses of the various retailers. The investigators would present a copyrighted tape marked with a p P copyright notice to one of the retailers' clerks. The investigators would ask the clerk for the proper length blank tape to copy the particular copyrighted tape presented. Then the investigator would feign ignorance of how the Rezound copier worked in order to persuade the clerk to do as much of the copying as possible. In some instances the investigators received assistance ranging from putting the originals in the appropriate slot in the machine to completing the entire copying process. The deposition of investigator Vaughan reveals that Vaughan made no effort to observe whether or not any of the bona fide customers copied copyrighted recordings. In oral argument, counsel for RCA stated that such an investigation would have been too time-consuming.
 
 
 5
 Based on their investigation, RIIA members filed ten separate actions, each naming one of the retailers and some naming Metacom and McCann. These actions were ultimately consolidated and submitted to the district court on cross motions for summary judgment. While the record is extensive, with many pages of depositions and affidavits supported by a plethora of exhibits, none of the parties urge that there is any material question of fact. The motions were referred to a magistrate, whose report the district court adopted. The magistrate concluded that RCA had proved a clear case of direct infringement against the retailers by showing that the investigators were permitted to make infringing copies.
 
 
 6
 With respect to Metacom and McCann the magistrate concluded that the Rezound machine was a staple article of commerce, which precluded a finding of contributory infringement against Metacom under Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). He concluded that Metacom asserted authority to control use of the Rezound machine by its operating rules and regulations, but that Metacom had failed to use that authority to prevent infringement. While there were copyright warnings attached to the equipment, Metacom provided no directions on how to limit or prevent duplication of copyrighted material and McCann had sent the retailers a letter saying it was legal for customers to duplicate anything for private use (though he warned the retailers not to assist in the copying). Metacom's authority to control use of the machine, together with Metacom's financial interest in the copying as the source for the notched blank tapes needed to use the machine, sufficed to render Metacom vicariously liable. Based on the magistrate's finding, the court held Metacom's president, McCann, liable for infringement on the grounds that he controlled the actions of the corporation.
 
 
 7
 In considering appropriate relief, the magistrate recognized that RCA had elected to recover statutory, rather than actual, damages.[5] He concluded that Metacom and McCann should bear the brunt of the damage award because they led retailers to believe that anything could be duplicated. He recommended statutory damages against Metacom and McCann of $5,000. He recommended the retailers be held jointly and severally liable in a total sum of $2,500. He concluded that none of the defendants had committed willful infringements and therefore declined to enhance the damages under section 504(c)(2).
 
 
 8
 With respect to injunctive relief, the magistrate recommended an injunction requiring the retailers to control access to the blanks, to inspect the originals their customers proposed to copy, and to insert the blank into the machine.
 
 
 9
 The magistrate recommended an award to RCA of $10,000 attorney's fees plus expenses. The district court adopted the magistrate's recommendations, except with regard to the attorney's fees and costs. After further proceedings, the court followed the magistrate's recommendation by entering judgment for RCA against all the defendants jointly and severally for $10,000 attorney's fees and actual expenses in the amount of $23,373.03.
 
 
 10
 RCA appealed and the defendants cross-appealed. In reviewing an order granting summary judgment this court is governed by the same standard as was the district court in its ruling on the motion. Krause v. Perryman, 827 F.2d 346, 350 (8th Cir.1987). Summary judgment may be granted only if an examination of all the evidence in the light most favorable to the losing party shows that there is no genuine issue of material fact and the winning party is entitled to judgment as a matter of law. Id.
 
 I.
 
 11
 RCA argues that the retailers were not involved in group action and therefore the district court erred in holding the retailers jointly and severally liable for the $2,500 damages assessed. Since the award was joint, the copying of one work by more than one retailer was considered one infringement under 17 U.S.C. Sec. 504; accordingly, statutory damages for only one infringement per work could be awarded, no matter how many retailers participated in infringing the work. RCA seeks a separate award for each retailer that infringed a work. This is a horse quickly curried. In its memorandum in support of its motion for summary judgment, RCA stated that "the Defendants jointly and severally have infringed" and that the Defendants "are all engaged in a conspiracy among themselves and with others to infringe copyrights, among which are those owned by Plaintiffs." As the retailers argue, the conspiracy allegations seem to have been included deliberately as a basis for greater punitive damages. Therefore, RCA invited any error and has no grounds to complain. See Federal Crop Ins. Corp. v. Hester, 765 F.2d 723, 727 (8th Cir.1985).
 
 II.
 
 12
 RCA next argues that the district court erred in not holding Metacom, McCann and the retailers liable for willful infringement in light of the fact that copying continued after RIAA had notified Metacom and the retailers that it considered their actions infringement. Professor Nimmer wrote that in the context of copyright law, willfulness entails knowledge that an act constitutes an infringement, rather than mere purposeful performance of an action without knowledge of whether it is an infringement:
 
 
 13
 The question is posed as to what "willfully" means in [the context of 17 U.S.C. Sec. 504(c)(2) ]. In other contexts it might simply mean an intent to copy without necessarily an intent to infringe. It seems clear that as used here "willfully" means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement since any infringement which was unwillful would necessarily be innocent. This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not "willful" for these purposes.
 
 
 14
 3 M. Nimmer and D. Nimmer, Nimmer on Copyright Sec. 14.04[B] (1987) (footnotes omitted). This analysis is subject to the corollary that reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant award of the enhanced damages. See, e.g., CBS Inc. v. Casino Record Distributors of Florida, Inc., 654 F.Supp. 677, 679 (S.D.Fla.1987).
 
 
 15
 RCA's willfulness argument against Metacom and McCann is based on McCann's advice that the retailers were not obliged to prevent customers from copying protected materials as long as the retailers did not help make the copies. We need not ascertain whether there would be a copyright violation by the retailers or Metacom if none of them had any involvement in the copying except making a machine and blank tapes available on their premises, since the retailers had substantial participation in the infringements in this case and Metacom and McCann were vicariously liable for the retailers' acts. However, we can say that in light of Metacom's counsel's opinion that there would be no liability for occasional copying of protected materials by customers unassisted by the retailers, Metacom was not reckless in relying on this position and seeking only to warn customers of the copyright laws and to prevent the retailers from assisting infringing customers, rather than taking positive steps to make sure no customer used the machines to infringe. Cf. Hearst Corp. v. Stark, 639 F.Supp. 970, 980 (N.D.Cal.1986) (court could not enter summary judgment on willfulness against defendant when wrongfulness of his action depended on unsettled question of law).
 
 
 16
 As for the retailers, RCA argues that it has shown willfulness because it has shown various remarks by the retailer's employees that the investigators' activities were "against the law." This does not show that the employees understood their own actions to be culpable, and RCA has not shown error in the district court's conclusion that the retailers' infringements were not willful.[6]
 
 III.
 
 17
 All parties object to the injunction. RCA argues that only requiring retailers to control the blank tape supply, and to insert the blank tape in the machine is insufficient because the retailer should also be required to start the machine. RCA also argues that the injunction should have been made applicable to Metacom and McCann, because otherwise RCA will have to bring actions against other retailers who have Rezound machines but are not parties to this suit.
 
 
 18
 Metacom and McCann argue that the additional labor involved in complying with the injunction will essentially render use of the machines impractical because of heightened labor costs.
 
 
 19
 "In shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow." Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973); see Surgidev Corp. v. Eye Technology, Inc., 828 F.2d 452, 456-57 (8th Cir.1987). Suffice it to say none of the parties has demonstrated that the district court abused its broad discretion in fashioning the injunctive remedy.
 
 IV.
 
 20
 All parties assail the award of attorneys fees. RCA argues that the fee award was too low because it was based in part on the size of the damages award, which in turn was erroneously limited by the finding of joint and several liability. RCA did not prevail in its attack against the joint and several award and accordingly cannot prevail on this argument.
 
 
 21
 To the extent RCA simply argues the award was too low, we find no abuse of discretion in the award. The parties do not contest that there was infringement and technical violation of the statute induced by the investigators. The district court had before it a record that disclosed that RIAA was to receive the fees awarded in this case to be used to finance similar litigation. Concern over such assaults on scarce judicial resources may understandably and properly have motivated the district court's abstemious approach to the award of fees in this case.
 
 
 22
 The appellees argue that no fees should have been awarded against them, since they did not act in bad faith, and that at any rate the fees are too high. It appears that bad faith has not been considered a prerequisite for awarding attorneys' fees in this circuit. See Wihtol v. Crow, 309 F.2d 777, 783 (8th Cir.1962) (remanding for trial court to determine whether to award fees in case where infringement due to mistake). The award of attorney's fees is entrusted to the trial court's sound discretion, 17 U.S.C. Sec. 505;[7] Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 122 (8th Cir.1987), and there was no abuse of that discretion in this case.
 
 
 23
 The appellees also suggest that they are entitled to fees in light of Warner Bros. v. Dae Rim Trading, Inc., 677 F.Supp. 740 (S.D.N.Y.1988). Even if we decided to follow Dae Rim in awarding fees to an infringer who prevailed on all the disputed issues at trial, the appellees in this case have not prevailed on several of the substantial issues they disputed and we see no reason to reverse on this ground.
 
 V.
 
 24
 The retailers argue that no fees and costs should be awarded past the date they made an offer of judgment pursuant to Fed.R.Civ.P. 68, offering to consent to an injunction and a several award of $1,000 each in full payment of damages, costs and attorneys fees. They argue that the award actually obtained was less favorable than their offers of judgment and therefore they should not have to pay fees or costs accruing after the date of their offer. However, the injunction the retailers proposed was less favorable to plaintiffs than that actually entered,[8] in that defendants would not agree to insert the blank tapes in the machines, but have been ordered to do so. Therefore, Rule 68 is inapplicable.
 
 VI.
 
 25
 Metacom, McCann and the retailers make other arguments that we need consider only briefly. The retailers argue that the district court erred in holding them to be direct infringers. The retailers contend that the basis of the district court's holding was either: (1) that the retailers copied copyrighted material as part of a demonstration of how the Rezound machine worked; or (2) that the retailers provided blank tapes for the customers to use. They contend that a holding of liability based on either of these theories would conflict with Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). This argument ignores the most obvious basis for holding the retailers liable: the retailers' employees actively assisted in copying the protected material by inspecting the copyrighted tape and selecting a blank tape of the proper length to copy the protected work and by actually operating the machine. This sort of direct participation in the illegal copying did not exist in Sony and has been held the basis for direct liability. RCA Records v. All-Fast Systems, Inc., 594 F.Supp. 335 (S.D.N.Y.1984). The retailers' employees did more than simply supply tape as the Sony defendants supplied video recorders; the retailers here also picked the proper tape to reproduce a particular copyrighted work. They did more than demonstrate the machine, as the retailers had in Sony; here, the employees helped the customers copy a whole tape, not just enough to demonstrate operation of the machine, and the customers kept the tape, rather than erasing it. See Universal City Studios, Inc. v. Sony Corp., 480 F.Supp. 429, 456-57 (C.D.Cal.1979), aff'd in part and rev'd in part, 659 F.2d 963 (9th Cir.1981), rev'd, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). There is ample support for holding the retailers liable.
 
 
 26
 Metacom argues that it should not be held liable for infringing simply because it retained title to the Rezound copiers. But it is not liable for that reason; instead, it is liable because it exercised control over the retailers' use of the machines by issuing directives on the use of the machines and because it profited from that use.
 
 
 27
 The prerequisites for vicarious liability for copyright infringements are:
 
 
 28
 1. The right and ability to supervise the infringing activity; and
 
 
 29
 2. An obvious and direct financial interest in exploitation of copyrighted materials.
 
 
 30
 Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963); Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir.1971). Metacom argues neither element exists in its case, but the facts belie this assertion. The record shows that Metacom retained control over the retailers' use of the machines by providing instructions for use. Metacom responded to an RIAA letter of complaint by assuring RIAA that Metacom "policed" the use of the machines. Metacom's financial interest in the use of the machines to copy protected materials is obvious in light of the fact that Metacom profited from sales of the tapes used in the machines. Metacom argues that once the customers bought a tape, Metacom had no interest in customers copying copyrighted materials as opposed to non-copyrighted; but this argument ignores the fact that some customers bought Metacom's tapes to use for infringing purposes who would not have bought them otherwise. Therefore, Metacom claimed the right and ability to supervise the retailers' practices and it profited from the infringements.
 
 
 31
 McCann argues that it was error to hold him personally liable because he had "no personal right of supervision of the stores" and no "financial interest in infringements." However, the record shows that McCann, like Metacom, satisfied the elements for vicarious liability. Despite his claim that he had no right to supervise the retailers, McCann in fact did supervise them by writing them letters instructing them on what uses of the copiers to permit. McCann's financial interest in the infringements follows directly from Metacom's, since McCann is a fifty percent shareholder in Metacom. Therefore, the district court's finding of liability was warranted. See Boz Scaggs Music v. KND Corp., 491 F.Supp. 908, 913-14 (D.Conn.1980) (corporate officer vicariously liable because he supervised infringing activity in his work for corporation and had financial interest in infringer).
 
 
 32
 The appellees urge us to consider whether the infringements in this case might be privileged under the fair use doctrine, 17 U.S.C. Sec. 107 (1982), since some customers may have used the Rezound machines for fair use only. The finding of liability was not based on what unknown customers may or may not do, but on the retailers' actions in cooperating with the RCA investigators. No fair use issue is presented by the record in this case.
 
 
 33
 The judgment is affirmed.
 
 
 
 [1]
 Thomas & Grayston Company; Falcon Heights Pharmacy; Nelson's Office Supply Stores; Desnick Bros. Drug, Inc.; St. Paul Book & Stationery Company; Bel-Aire Pharmacy, Inc.; Fisher Photo Supply Company; Byerly's Inc.; Merwin Drug Company, Inc.; and Zuckman Electronics Company, Inc
 
 
 [2]
 The appellants are RCA/Ariola International, Inc. by change of name now BMG Music, MCA Records, Inc., Polygram Records, Inc., Atlantic Recording Corporation and CBS Inc. For convenience, we will refer to all appellants simply as "RCA."
 
 
 [3]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, based upon a report and recommendation of Magistrate Bernard Becker
 
 
 [4]
 An example of such a warning is as follows:
 WARNING!
 The Copyright Law (Title 17 of the United States Code) has been amended by a recent Act of Congress, Public Law 92-140, protecting certain sound recordings against unauthorized duplication. It is an infringement of this Law to copy any properly registered cassette designated with copyright notice (e.g., p P 1972, Doe Records. Inc.)
 You are responsible for:
 
 
 [1]
 Copyright infringement--if any
 
 
 [2]
 The loss of your cassette master during the copy cycle
 USE OF THIS MACHINE IS AT YOUR OWN RISK
 One retailer's sign prohibited use of the Rezound machine for duplicating copyrighted material.
 
 
 [5]
 17 U.S.C. 504 (1982) provides:
 (a) In General.--Except as otherwise provided by this title, an infringer of copyright is liable for either--
 (1) the copyright owner's actual damages and any additional profits of the infringer as provided by subsection (b); or
 (2) statutory damages, as provided by subsection (c).
 * * *
 (c) Statutory Damages.--
 (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
 (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000. * * *
 
 
 [6]
 RCA also argues that the court should have found Metacom and McCann liable as contributory infringers. Since we have affirmed the district court's decision that they are liable as vicarious infringers, there is no need to reach this alternative ground
 
 
 [7]
 17 U.S.C. Sec. 505 (1982) provides:
 In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.
 
 
 [8]
 Despite Thomas & Grayston's argument that it offered a more favorable injunction than that obtained, the record before us does not show any such offer before June, 1986; RCA's affidavits show that Thomas & Grayston's share of the costs alone as of that date would have exceeded $1,000, and therefore the money judgment they had offered was not as favorable as that RCA actually obtained