**UNICITY MUSIC, INC., et al.**

v.

**OMNI COMMUNICATIONS, INC. and W.J. Wheeler.**

**No. PB-C-93-461.**

United States District Court, E.D. Arkansas, W.D.

Feb. 14, 1994.

---

Patricia Sievers Lewallen, Wright, Lindsey & Jennings, Little Rock, AR, for plaintiffs Unicity Music Inc., Lucky–Break, Pardini Music, Cherry Lane Music Pub. Co., Inc., Turnpike Tom, Stonebridge Music, Somerset Songs Pub. Inc., Cass County Music Co., Red Cloud Music Co., Jeddrah Music, Polygram Intern. Pub., Inc., Hideout Records & Distributors, Inc., Dovan Music, Prophet Music Inc., Implusive Music, Sterling Music Co., Addison Street Music, Brockman Music, plaintiff BMG Songs Inc., Denjac Music Co., MCA Inc., Jobete Music Co., Inc., Black Bull Music Inc., Colgems–EMI Music Inc., WB Music Corp., Chi–Boy Music and Kenny Nolan Pub. Co.

John H. Haley, Arnold, Grobmyer & Haley, Little Rock, AR, for defendants Omni Communications, Inc. and W.J. Wheeler.

## ORDER

EISELE, District Judge.

Before the Court is Plaintiffs' Motion for Summary Judgment and Defendants' response. This is a copyright case, brought pursuant to Title 17 U.S.C. § 101 et seq.

## INTRODUCTION

Plaintiffs are all members of the American Society of Composers, Authors and Publishers (ASCAP). ASCAP is an organization of copyright owners, including song writers and music publishing companies, who own copyrights in musical compositions. Plaintiffs have granted ASCAP a nonexclusive right to license nondramatic public performances of their copyrighted musical compositions. On behalf of its members, ASCAP regularly licenses businesses that use music, including radio stations. When a business purchases an ASCAP license, that license gives the business permission, for the relevant time period of the license, to present nondramatic public performances of any musical composition belonging to any member of ASCAP. In other words, the license allows businesses to use copyrighted songs without having to contact each individual copyright owner directly for permission.

Defendant Omni Communications, Inc., at all pertinent times, was and still is a corporation organized and existing under the laws of the state of Arkansas, and is engaged in the business of operating a commercial radio station in Sheridan Arkansas known by the call letters KEZQ–FM, (f/k/a KXIX–FM), under license granted by the Federal Communications Commission. Defendant W.J. Wheeler is a citizen of the State of Arkansas and a resident of this district and, at all times

pertinent, was and still is the Vice–President and sole stockholder of defendant Omni Communications, Inc. with primary responsibility for the control, management, operation and maintenance of its affairs.

Plaintiffs allege that Defendants never obtained a license from ASCAP and never paid license fees for public performances of copyrighted music in the ASCAP repertory broadcast over KEZQ–FM f/k/a KXIX–FM. Plaintiffs allege that Defendants persisted in this course of conduct from the time that they took control of KEZQ–FM f/k/a KXIX–FM on September 12, 1990 until they sold the station in the Spring of 1993. Plaintiffs filed suit in July of 1993, alleging twenty causes of action for copyright infringement based on Defendants' public performances of copyrighted musical compositions. Plaintiffs have requested injunctive relief, statutory damages, costs and attorneys' fees.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

In *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the United States Supreme Court stated that "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motions may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 885, 110 S.Ct. at 3187 (quoting *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The *Lujan* Court further stated that where the nonmoving party will carry the burden of proof at trial, "Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case." *Id.*

Once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), this does not mean that the nonmoving party may simply rest upon general allegations in the complaint or assertions that there exists a genuine issue of fact. *See Lujan,* 497 U.S. at 887, 110 S.Ct. at 3188. "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's response, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

For reasons discussed herein, the Court finds that Defendants have not met their burden, and summary judgment is appropriate.

## ANALYSIS

■ The owner of a copyright has the exclusive right to perform, or authorize others to perform, the copyrighted work. 17 U.S.C. § 106(4). Anyone who violates such an exclusive right is an infringer of the copyright. 17 U.S.C. § 501(a). The plaintiffs must prove the following four elements:

1) authorship of the songs, 2) ownership of the copyrights, 3) compliance with the statutory requirements to obtain the copyrights, and 4) unauthorized public performance.

*Lasalle Music Publishers, Inc. v. Highfill,* 831 F.2d 300 (8th Cir.1987) (affirming trial court's application of such elements).

Prior to and since September 26, 1992, Plaintiffs have been the owners of the copyrights in the musical compositions "Just to See Her", "Sunshine on My Shoulders", "City of New Orleans", "Love on the Rocks", "I Want to Know What Love Is", "I Can't Tell You Why", "Little Green Apples", "We've Got Tonite (a/k/a We've Got Tonight)", "I Can See Clearly Now", "Cracklin'

Rosie", "Just the Way You Are", "The Sweetest Thing (I've Ever Known)", "You Are", "Sailing", "Time in a Bottle", "My Love", "The Way We Were", "Tin Man", "Right Here Waiting", and "Masterpiece". Plaintiffs have provided copies of the copyright certificates, and affidavits to establish the first three elements. Defendants do not dispute the first three elements.

■ Plaintiffs have submitted affidavits attesting to the performance of the above 20 songs by broadcasts aired over the defendant's radio station on September 26, 1992. Defendants respond that there is a material issue of fact because Defendants have no records from which they can determine whether those songs were played on that date. Ignorance does not create an issue of material fact. There is no evidence before this Court which casts a shadow on Plaintiffs' affidavits detailing the infringing performances.

■ Defendants' next assertion is that even if the musical compositions in question were broadcast, summary judgment is not appropriate because "a factual dispute exists regarding the state of mind of the defendants and whether the alleged infringement constituted willful misconduct." Defendants' argument is that intent is relevant in consideration of the appropriate amount of statutory damages, and that defendant Wheeler was acting in good faith in attempting to negotiate an agreement for licensing and for payment on the outstanding arrearages owed by defendant Omni to ASCAP.

A review of ASCAP memoranda and correspondence between ASCAP and Defendants, as submitted to the Court in attachments to David Bander's affidavit, is illustrative of the relationship between the ASCAP and Wheeler. Defendants never obtained an ASCAP license for radio station KEZQ–FM and never paid license fees. Negotiations did seem to be ongoing, and Defendant Wheeler successfully postponed actual payment on past and present licensing fees for quite some time. ASCAP did allow Defendants to operate as if licensed until June 24, 1992, as the parties continued to negotiate payment plan. Finally, on June 24, 1992, ASCAP sent a certified letter to Defendants which read as follows:

Dear Broadcaster:

By letter dated October 30, 1991, we advised you that in accordance with paragraph 6 of the final order dated October 8, 1991 in *U.S. v. ASCAP, application of Group W Radio, Inc., et al.,* your station was not entitled to an ASCAP license because of the default on the account

You were further advised that in order to become eligible for the license, all license fees and reports due had to be submitted within 45 days. Otherwise, your station would not be licensed to perform copyrighted musical compositions in the ASCAP repertory.

The 45–day period has expired, but your account has not been cleared. *Accordingly, your station is not licensed to perform music in the ASCAP repertory and any performances of copyrighted musical compositions in the repertory without advance written permission from the members in interest will constitute infringements of the copyright.*

A special notice concerning monitoring expenses is enclosed.

(emphasis added). There is nothing vague or ambiguous about this letter. Defendants were on full notice that ASCAP would regard any subsequent broadcast of music in the ASCAP repertory as a copyright infringement. Defendants' broadcasts on September 26, 1992 cannot be regarded as innocent.

On October 3, 1992, ASCAP notified Defendants of the September 26, 1992 documentation of copyright infringement, and offered to settle the matter if Defendants paid the balance due within ten days. If payment was made within the ten day period, ASCAP offered to license Defendants retroactively. Defendants responded by submitting partial payment in the form of a $3500.00 check on October 29, 1992 (sixteen days after the offer, by its own terms, had expired). ASCAP offered to accept the check as a partial payment if Defendants executed a Confession of Judgment. Defendants refused, and ASCAP filed suit.

Defendants argue that the subsequent dealings with ASCAP somehow nullifies the infringement. Defendants were on notice as of June 24, 1992 that any subsequent broadcast of music in ASCAP's repertory would be considered an infringement. As of September 26, 1992, the date of the documented infringements, Defendants had made no proposal of payment and had no reason to believe that ASCAP would treat the broadcasts as licensed.

■ Defendants also argue that "arguably" the ongoing contact between ASCAP and Defendants estops Plaintiffs from claiming infringement. The elements of estoppel are:

1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; 2) reliance, in good faith upon the misleading conduct or false representations of the party to be estopped; and 3) change in position based thereon to his injury, detriment or prejudice.

*United States v. Aetna Casualty & Surety Co.*, 480 F.2d 1095, 1099 (8th Cir.1973). ASCAP made no false representations, its conduct was not misleading, and Defendants had actual knowledge of ASCAP's position. Estoppel does not apply.

■ Defendant Wheeler argues that he should not be held jointly and severally liable for the infringement. Vicarious liability for copyright infringement exists when a party has the right and ability to supervise the infringing activity and an obvious and direct financial interest in exploitation of copyrighted material. *RCA/Ariola International, Inc. v. Bel–Aire Pharmacy, Inc.*, 845 F.2d 773, 781 (8th Cir.1987) (citations omitted).

Although it was the radio station KEZQ–FM which actually caused the public performance on September 26, 1992 of Plaintiffs' copyrighted music, KEZQ was owned and operated by Omni Communications, Inc. Wheeler is the vice-president and 100% shareholder of the corporation. He was in charge of the format for the station. He was the general manager, in charge of the day-to-day operations of the station. He was the person with whom licensing organizations dealt. He supervised the program director.

He had the right and ability to supervise the infringing activity and, as sole shareholder, an obvious and direct financial interest in exploitation of copyrighted material. Therefore, both defendants Omni Communications, Inc., and W.J. Wheeler are jointly and severally liable as infringers for the public performance of Plaintiffs' copyrighted music on September 26, 1992.

### INJUNCTIVE RELIEF

■ 17 U.S.C. § 502(a) provides:

Any court having jurisdiction of a civil action arising under this title may … grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

While Omni no longer owns the radio station, it is unclear whether Wheeler is still involved in the operation of KEZQ–FM. Plaintiffs' request for an injunction restraining the defendants and all persons acting in concert with them from publicly performing, without appropriate permission, the compositions involved in this case will be GRANTED.

### DAMAGES

17 U.S.C. § 504 provides in pertinent part:

(c) STATUTORY DAMAGES:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $500 or more than $20,000 as the court considers just …

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000.

In interpreting § 504(c) and its predecessor, courts have held that in the absence of proof

of actual damages, the statute invests the trial court with wide discretion to set damages within the statutory limits.

■ Plaintiffs have asked for damages in the amount of $2,500 per infringement, for a total of $50,000. Defendant argues that granting the Plaintiffs' motion would be inappropriate because the question of whether his infringement was willful and deliberate is in dispute.

As the amount requested by Plaintiffs is well within the statutory damages set in § 504(c)(1), "the issue of willful infringement is not germane to this lawsuit and the court need only determine whether [Defendants'] state of mind was knowing or innocent." *Tempo Music v. Christenson Food & Mercantile*, 806 F.Supp. 816, 819 (D.Minn.1992). The Court has already determined that Defendants' actions were knowing.

■ Among the factors the court may consider in determining the amount of damages are the revenues that the plaintiffs lost as a result of the infringement, the licensing expenses saved by infringing, the profits gained by infringing, and the Defendants' state of mind. *Halnat Publishing Co. v. L.A.P.A, Inc.*, 669 F.Supp. 933, 937 (D.Minn. 1987). The court notes, however, that these are factors that the court *may* consider, but need not necessarily consider, in determining an appropriate award of damages.

■ Plaintiffs assert licensing expenses in the amount of $23,200, adequately supported by documentation and affidavit. Defendants assert that the only evidence of any infringements relate to the September 26, 1992 broadcasts, and that the only license fee that would be relevant would be for that month. Defendants cite no law to support that proposition, and they do not dispute the licensing expenses balance of $23,200. The amount of profits reaped by defendants as a result of the infringements is unknown, as is the amount of revenues lost by plaintiff copyright owners as a result of the infringements. *Id.* at 937.

■ Generally, an award of statutory damages under § 504(c)(1) is intended both to compensate plaintiffs and deter defendants from future infringing conduct by making it clear that infringement is significantly more expensive than paying the licensing fees. *Id.* In this case, the requested $2,500 per infringement is reasonable and serves the purposes of the statute. Plaintiffs are thus awarded $2,500 for each infringement, for a total of $50,000.

## ATTORNEYS' FEES AND COSTS

■ Plaintiffs also seek costs and attorneys fees. Section 505 of the Copyright Act provides that the court in its discretion may award costs, including a reasonable attorneys' fee, to the prevailing party. 17 U.S.C. § 505. The court finds that Plaintiffs' request for an award of costs and attorneys' fees is reasonable because Defendants knowingly infringed upon the plaintiffs' copyrights and did so even after the plaintiffs informed them that their actions infringed on their copyrights.

Thus far, Plaintiffs have an affidavit setting forth $5,957 in attorneys' fees (51.8 hours at $115 per hour) and $398.30 in costs. Defendants do not dispute the reasonableness of the amounts in question. The requested fees and costs are granted. Plaintiffs are directed to submit to the Court any additional fees and costs which have accrued since the filing of the motion for summary judgment for the Court's approval.

## CONCLUSION

Plaintiffs' motion for summary judgment is hereby GRANTED. Plaintiff's are awarded a permanent injunction, statutory damages in the amount of $50,000.00, attorneys' fees in the amount of $5957.00 and costs in the amount of $398.30, to be adjusted as necessary in a supplemental order.

IT IS SO ORDERED.