896 F.Supp. 904 (1995)
CASS COUNTY MUSIC CO. and Red Cloud Music Co., Plaintiffs,
v.
C.H.L.R. INC., Jeffrey C. Jones, John L. Marks and Stanford P. Glazer, Defendants.
No. LR-C-94-531.
United States District Court, E.D. Arkansas, Western Division.
April 27, 1995.
*905 *906 Nancy Bellhouse May, Patricia Sievers Lewallen, Wright, Lindsey & Jennings, Little Rock, AR, for plaintiffs.
Pamela Ann Moseley, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, for defendants.

MEMORANDUM AND ORDER
SUSAN WEBBER WRIGHT, District Court.
This is a lawsuit involving copyright infringement under 17 U.S.C. § 501 et seq. The complaint states that the defendants, who own a comedy club, did not purchase a license that would have permitted them legally to play certain musical compositions over the club's stereo system. The plaintiffs seek the remedies set forth in the code, specifically, an injunction under Section 502(a), statutory damages under Section 504(a), and costs including a reasonable attorney's fee under Section 505. This Court has jurisdiction under 28 U.S.C. § 1338(a).
Pending before the Court is a summary judgment motion by the plaintiffs. For the reasons that follow, summary judgment is granted for the plaintiffs.

I.
This action springs from the events of the evening of May 6, 1994. On that night, investigators hired by the American Society of Composers, Authors and Publishers ("ASCAP") heard musical compositions by the band "The Eagles" publicly performed when prerecorded songs were played over the defendants' stereo system for patrons of Stanford's Comedy House ("Stanford's"). The investigators state in affidavits attached to the summary judgment motion that they heard played "Lyin'Eyes," "Desperado," "One of These Nights," and "Tequila Sunrise." It is not disputed that the plaintiffs own valid copyrights in those songs. Nor is it disputed that the plaintiffs are members of ASCAP.[1] The plaintiffs have granted to ASCAP the non-exclusive right to license non-dramatic public performances of their copyrighted songs.
The plaintiffs state that ASCAP representatives advised the defendants by letter, telephone contact and personal visits prior to May 6, 1994 that copyright law requires the defendants to obtain permission from ASCAP *907 or the individual copyright owners in order to perform lawfully any ASCAP copyrighted music. The defendants agree that they were advised by the plaintiffs of the need for an ASCAP license "should defendants play ASCAP music."
The defendant C.H.L.R., Inc., is an Arkansas corporation that owns and operates Stanford's in Little Rock. Defendants Jeffrey C. Jones, John L. Marks, and Stanford P. Glazer are officers, directors and shareholders of C.H.L.R., Inc. Jones, Marks, and Glazer each have a financial interest in Stanford's.
Prior to May 6, 1994, ASCAP and the defendants engaged in negotiations concerning purchase of an ASCAP license which would have permitted the defendants to play legally ASCAP composers' music before and after the comedy shows. However, Stanford's did not enter into a license agreement with ASCAP. The defendants never sought permission directly from the plaintiffs or any other copyright owners to perform copyrighted material at Stanford's.
It would have cost the defendants $1,602.38 for an ASCAP license for the period from September 15, 1993 through December 1994 and $1,281.00 for 1995.
In January 1995, Stanford's entered into a licensing agreement with ASCAP's competitor, Broadcast Music Inc. ("BMI"). The BMI license cost $300 a year.

II.
Summary judgment may be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Evans v. Pugh, 902 F.2d 689, 691 (8th Cir.1990). The burden on the moving party is only to demonstrate that the record does not disclose a genuine issue as to a material fact. Once that is done, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must "come forward with `specific facts showing there is a genuine issue for trial.'" Id. at 587, 106 S.Ct. at 1356. (quoting Fed. R.Civ.P. 56(e) and adding emphasis). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Id. (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'" Id. (citation omitted).
The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law. Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir.1989).

III.
The elements of proof of copyright infringement by an unauthorized public performance of a musical composition are:
(1) originality and authorship of the compositions involved;
(2) compliance with the formalities required to secure a copyright under Title 17 of the United States Code;
(3) ownership by the plaintiffs of the copyrights of the compositions involved in the lawsuit;
(4) defendant's public performance of the compositions for profit; and
(5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performances.
Van Halen Music v. Palmer, 626 F.Supp. 1163, 1165 (W.D.Ark.1986) (citation omitted).
Elements one, two, and three above are undisputed. Regarding element number four, the plaintiffs offer two affidavits that the relevant Eagles' songs were played. The defendants stated they have no evidence to counter these affidavits. Concerning element number five, the defendants state that "if a performance occurred," it was unauthorized by either the defendants or the plaintiffs. The Court finds that plaintiffs have established that a copyright infringement occurred as to the four listed Eagles' songs.

*908 IV.
The plaintiffs assert that Jones, Marks, and Glazer are jointly and severally liable with the corporation for the infringements. The defendants argue it is a fact issue whether Marks and Glazer should be held either personally or vicariously liable.
The general standard for personal liability in a copyright infringement action requires that an individual, including a corporate officer, have the ability to supervise the infringing activity and have a financial interest in the activity or personally participate in the activity. Pinkham v. Sara Lee Corp., 983 F.2d 824, 834 (8th Cir.1992) (citations omitted).
Jones states in his affidavit that he has been the "sole general manager of the day-to-day operations" of Stanford's since it opened in Little Rock in September 1993. He states that he is responsible for "all day-to-day management decisions," and that his duties included selecting music to be played before and after shows. Jones was also the person with whom ASCAP had the most contact. After concluding in March 1994 that Stanford's would not purchase an ASCAP license, Jones implemented a policy designed to prevent further playing of ASCAP music.
It is undisputed that Jones has a financial interest in the activities of Stanford's. The facts illustrate he had the ability to supervise the infringing activity and that he personally selected the music to be played. The Court finds that Jones meets the standard for personal liability.
The test for establishing vicarious liability for copyright infringement is whether the defendants had the right and the ability to supervise the infringing activity and also had an obvious and direct financial interest in such activities. Van Halen, 626 F.Supp. at 1166 (citation omitted); RCA/Ariola International, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir.1988) (citations omitted). Marks and Glazer have admitted having a financial interest in Stanford's. The only issue to be determined is whether they had the right and ability to supervise the infringing activity.
Imposing liability on a "controlling individual" is based on the idea that the person is in a position to control the conduct of the "primary" infringer, which is seen as the corporation. Van Halen, 626 F.Supp. at 1166-67 (citation omitted). Vicarious liability may be imposed on a controlling individual who did not know of the infringement. Id. at 1167 (citation omitted).
In Van Halen, the court imposed liability on the president and manager of a private club, Edwin T. Palmer, Jr., who had final say over the type of music played, even though he did not personally select the music. Id. at 1165. Palmer had been contacted by ASCAP representatives regarding the need for a license, but he never purchased one. Id. at 1165-66.
In Fourth Floor Music, Inc. v. Der Place, Inc., 572 F.Supp. 41, 43 (D.Neb.1983), liability was imposed on a president and corporate stockholder who exercised "a good bit of control over the day-to-day operations" of the infringing nightclub. Id. at 44. In Boz Scaggs Music v. KND Corp., 491 F.Supp. 908 (D.Conn.1980), the court found that a corporate vice president, who was the full-time general manager of the infringing radio station, was jointly liable with the corporation because he had a direct stake in the financial success of the station and he oversaw the station's daily operation. Id. at 913-14. In Unicity Music, Inc. v. Omni Communications, Inc., 844 F.Supp. 504 (E.D.Ark.1994), liability was imposed on a defendant who was the general manager of a radio station and who ran the day-to-day operation of the station. Id. at 509. He was also vice-president and 100% shareholder of the corporation that owned and operated the station. Id. In addition, he was the person with whom licensing organizations dealt, and he supervised the program director. Id. He was held jointly and severally liable with the corporation. Id.
In this case, Jones states in his affidavit that while he was negotiating with ASCAP about a license, he "consulted with" Marks about the course of the negotiations and "made mention" of the negotiations to *909 Glazer. Jones states that the ultimate decision on ASCAP licensing was his.
Marks and Glazer in their affidavits state they played passive roles in day-to-day operation of Stanford's, but they knew of the negotiations with ASCAP. Each states he had no participation in determining what "exact musical compositions" would be played at Stanford's. However, in their answers to requests for admission, each admits that he "determined or otherwise participated in the determination of the music policy" of Stanford's. The affidavit of Robert E. Pauley, an ASCAP district manager, states ASCAP contacted Marks regarding the licensing, and that ASCAP forwarded some correspondence sent to Jones to Marks and Glazer.
In the defendants' answers to requests for admission, the defendants admit that Jones, Marks and Glazer "share responsibility for the control, management, operation and/or maintenance of the affairs of C.H.L.R., Inc." Marks and Glazer deny directly controlling or managing daily affairs. Marks and Glazer deny supervising employees.
In cases discussed above, the courts imposed vicarious liability on persons who took a more active role with the infringing entity than either Marks or Glazer apparently have in this case. Nevertheless, the test for vicarious liability is not whether the defendant acted but whether he had the right and the ability to act by supervising the infringing activity. Marks and Glazer have stated they shared responsibility for control and management and they participated in setting the music policy. The Court finds that Marks and Glazer should be held vicariously liable because they had the right and the ability to supervise management and music policy.

V.
The plaintiffs contend that the May 6, 1994 playing of songs by The Eagles was a knowing and intentional copyright infringement. The defendants assert there is a genuine issue of material fact as to whether any infringement was knowing and intentional. The plaintiffs are seeking statutory damages of $5,000 per infringement, or a total of $20,000, under 17 U.S.C. § 504(c)(1). That section permits the court to award statutory damages "for all infringements involved in the action, with respect to any one work, ... in a sum of not less than $500 or more than $20,000 as the court considers just."[2]
Once an infringement has been proven, a defendant's intent is not relevant to the issue of liability. Pinkham, 983 F.2d at 829. Liability is absolute; a defendant is liable even for accidental infringements. Id. Whether a defendant is an "innocent" infringer is relevant only to the fixing of statutory damages. Little Mole Music v. Spike Investment, Inc., 720 F.Supp. 751, 754 (W.D.Mo.1989). Even a non-deliberate infringement is not innocent. Id. at 755. To be an innocent infringer, the defendants must have acted in complete ignorance of the fact that their conduct might infringe on the rights of another party. Id. (citation omitted).
In his affidavit, Jones stated that after negotiations began for purchase of an ASCAP license, he "continued to play ASCAP music in reliance" on his belief that "[we] were negotiating a licensing arrangement." Jones stated that in March 1994, he concluded Stanford's and ASCAP would not be able to agree on terms, and he instituted a "no-ASCAP music policy." He stated he requested and obtained a book listing all ASCAP artists, made phone calls to determine if particular artists were ASCAP, and then produced a tape of non-ASCAP artists. He removed any ASCAP tapes and instructed *910 employees there were two non-ASCAP tapes that could be played before and after the shows. Jones, Marks and Glazer state they have no knowledge of what music was played on May 6, 1994, and their response states they "can only speculate as to the source of the music heard" on that date. In their affidavits, these three defendants state they had no reason to believe that any actions they or their representatives took would infringe the plaintiffs' copyrights.
The plaintiffs point to contacts between the parties prior to May 6, 1994 to support their contention that the defendants were knowing infringers. In his affidavit, Pauley, the ASCAP district manager, states he first contacted Jones regarding an ASCAP license in September 1993 and then later contacted Marks in October 1993. Pauley said ASCAP sent Jones six letters informing him that "unauthorized public performance of copyrighted music is unlawful" and warning that ASCAP can recover damages for such performances. Pauley also states, "In fact, ASCAP wrote to Marks less than one month before the infringing performances and gave defendants one more chance to purchase a license and avoid an action for copyright infringement." From September 1993 through May 1994, ASCAP representatives also contacted Jones and Marks in person or by telephone on the licensing matter, according to Pauley.
In Unicity Music, supra, the court decided the issue of whether defendants were "knowing" infringers based on a certified letter to the defendants, which warned them that further use of ASCAP material without a license would constitute copyright infringement. Unicity Music, 844 F.Supp. at 508. The court stated that the defendants' subsequent broadcasts of ASCAP music could not be considered innocent in light of the letter. Id. In this case, among those letters ASCAP sent to the defendants were certified ones dated February 25, 1994 and March 15, 1994, which included the following, "Until you are licensed, we must again remind you that unauthorized performances of our members copyrighted musical compositions constitute infringements of copyright...." [Doc. # 18, Exh. F]. The Court also notes a July 26, 1994 letter from Jones to plaintiffs' counsel which states "... an acquaintance of mine in the hospitality industry told me that as long as I did not play or promote the playing of tapes my employees were free to bring their own music in to play and in that way I could legally avoid ASCAP licensing." [Doc. # 18, Exh. C].
The Court finds that the defendants cannot be considered innocent infringers because, as the facts illustrate, they were well aware that playing ASCAP material without a license would be a violation of United States' copyright law.
The copyright owners in this case have elected to recover an award of statutory damages rather than actual damages and profits. They are seeking $5,000 per infringement, or a total of $20,000. Assessment of statutory damages for copyright infringement lies within the court's sound discretion and sense of justice. Tempo Music, Inc. v. Christenson Food & Mercantile Co., 806 F.Supp. 816, 820 (D.Minn.1992) (citations omitted). Among the factors the court may consider in arriving at an award of statutory damages are the licensing expenses saved and profits reaped by the defendants from the infringements, the revenues lost by the plaintiffs as a result of the infringements, and the infringers' state of mind, i.e. willful, knowing or innocent. Halnat Publishing Co. v. L.A.P.A., Inc., 669 F.Supp. 933, 937 (D.Minn.1987).
A letter dated October 12, 1993, attached to Pauley's affidavit shows that ASCAP offered the defendants a 20% discount on an ASCAP license for the period from September 15, 1993 to September 14, 1994 at a price of $972. A letter dated February 10, 1994 stated that the cost of a license from 9/15/93 to 12/31/93 was $354.38, based on $1,215 per year, and that the cost of a license for 1994 was $1,248. The total bill to come into compliance with ASCAP licensing would have been $1,602.38. Subsequent letters quote the same $1,602.38 price.
According to Jones' affidavit, Stanford's purchased a license from BMI in January 1995 at a cost of $300. The defendants contend that the ASCAP price was "excessive" *911 considering the nature and profitability of defendants' business. Jones contends that the primary business of Stanford's is the presentation of comedy shows, and that the playing of prerecorded music is an incidental part of the business. Jones stated that in 1993 Stanford's lost approximately $20,000 and in 1994 it showed a before-tax profit of approximately $15,000.
There was no evidence as to revenues lost by the plaintiffs as a result of the infringements. The Court has found that the defendants' state of mind with regard to the infringements was knowing.
In F.W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952), the Supreme Court found that awarding plaintiffs damages equal to lost profits would not be a sufficient deterrent to infringers. The statutory rule is designed to "discourage wrongful conduct." Id.
The minimum statutory damages in this case, per infringement, would be $500. As previously stated, the ASCAP license fees for 1993 and 1994 total $1,602.38.
In Van Halen, supra, the ASCAP licensing fee would have been $5,045.41, and the Court awarded the plaintiffs $1,500 per infringed song, for a total of $6,000. Van Halen, 626 F.Supp. at 1167. In Unicity Music, supra, the licensing fees would have been $23,200; the plaintiffs were awarded $2,500 for each infringement, for a total of $50,000. Unicity Music, 844 F.Supp. at 510. This case is unlike either Van Halen or Unicity Music in that these defendants made an effort to prevent further unlawful playing of ASCAP music. The defendants in Van Halen and Unicity Music never took any steps to prevent further infringements after they refused to purchase an ASCAP license. Therefore, the Court concludes the plaintiffs should recover statutory damages in the sum of $1,000 per infringement, for a total of $4,000, an amount which is approximately 2.5 times the cost of the ASCAP license for the relevant period.

VI.
Under 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." In copyright actions, the plaintiffs generally obtain a permanent injunction when an infringement and liability have been established if there is a threat of continuing violations. Tempo, 806 F.Supp. at 821 (citations omitted).
The plaintiffs note that another infringement lawsuit was filed against defendants Marks and Glazer subsequent to the August 17, 1994 filing of this case. The second lawsuit was filed February 2, 1995 in federal district court in Kansas and alleges copyright violations in connection with the playing of songs at a Stanford's Comedy House located in Wichita, Kansas. In both Van Halen, supra, and Unicity Music, supra, the courts granted injunctive relief upon finding that infringements had occurred. This Court hereby enjoins the defendants from any further infringements of the ASCAP musical compositions involved in this case.

VII.
Under 17 U.S.C. § 505, a court has discretion to allow the recovery of costs and to award "a reasonable attorney's fee" to the prevailing party as part of the costs. Factors which may justify denial of attorneys' fees include the defendants' status as innocent, rather than knowing or willful infringers, or a good faith attempt by the defendants to avoid infringement. Van Halen, 626 F.Supp. at 1167, citing Boz Scaggs Music, 491 F.Supp. at 915. The Court has found that the defendants were knowing infringers. Even if the Court finds that the removal of the ASCAP tapes was a good faith attempt to avoid infringement, at best it can be considered an attempt to avoid further infringements. The letter from Jones dated July 26, 1994 suggests the defendants were willing to infringe ASCAP works if they could do so without incurring liability.
In light of these facts, the Court finds that the defendants should be required to pay reasonable attorneys' fees and costs for the plaintiffs. According to an affidavit from plaintiffs' counsel, the plaintiffs have incurred $3,656.00 in attorneys' fees and $634.08 in *912 litigation-related expenses. The affidavit from the ASCAP district manager states ASCAP incurred expenses of $255.50 in documenting the infringements before the suit was filed. The Court finds the plaintiffs are entitled to recover their costs in the amount of $889.58.
As to the attorneys' fees, the exhibits to the affidavit from plaintiffs' counsel show that the plaintiffs were billed at a rate of $115 per hour for most of the hours for the lead attorney and $55 an hour for another attorney.[3] The lead attorney spent 30.2 hours on the case, and the other attorney spent two hours. By the Court's calculations, this equals $3,583 in fees. In a copyright infringement case decided in 1994 by the Western District of Arkansas, the plaintiffs were permitted to recover $115 an hour for attorneys' fees. Unicity Music, 844 F.Supp. at 510.
The Court finds that the $115 hourly rate and the $55 hourly rate are reasonable and that plaintiffs are entitled to recover $3,583 in attorneys' fees. The plaintiffs are directed to submit to this Court, by no later than May 20, 1995, affidavits detailing additional fees and costs which may have accrued between the date of filing the motion for summary judgment and the date of this Order.

VIII.
In conclusion, summary judgment is granted for the plaintiffs. The plaintiffs are awarded a permanent injunction, statutory damages in the amount of $4,000, attorneys' fees in the amount of $3,583, and costs in the amount of $889.58 to be adjusted as necessary in a supplemental order.
IT IS SO ORDERED.
NOTES
[1] According to the affidavit of Robert E. Pauley, an ASCAP district manager, ASCAP is an unin-corporated association with more than 60,000 members who write and publish musical compositions. On behalf of its members, ASCAP licenses music users, such as restaurants and radio stations, permitting them to legally publicly play any of the songs in the ASCAP repertory.
[2] The plaintiffs apparently are not seeking damages under 17 U.S.C. § 504(c)(2), which permits a court to increase the award of statutory damages to not more than $100,000 if the court finds the infringement was committed "willfully." If the court finds under subsection (c)(2) that the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the court may decrease the award of statutory damages to an amount not less than $200. Since the plaintiffs are not seeking an award exceeding the monetary limits set in subsection (c)(1), the issue of whether the infringement was willful need not be addressed. Tempo Music, Inc. v. Christenson Food & Mercantile Co., 806 F.Supp. 816, 819 (D.Minn.1992). The state-of-mind determination to be made by the court where willfulness is not an issue is that of whether the infringer acted knowingly or innocently. Id.
[3] The billing rate for the lead attorney rose to $120 per hour for the last 14.6 hours billed.